**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARLEEN FREEMAN, individually and
on behalf of all others similarly
situated; JAMES ALEXANDER,
individually and on behalf of all
others similarly situated,
            *Plaintiffs-Appellants,*

v.

LASKY, HAAS & COHLER, a
professional corporation; CHARLES
B. COHLER; LUCE, FORWARD,
HAMILTON & SCRIPPS; CHRISTOPHER
J. HEALEY; WHITE AND BRIGHT, a
professional corporation; DAVID S.
BRIGHT; MUSICK, PEELER &
GARRETT LLP; MICHAEL J.
HICKMAN; JON F. MCKINLEY;
CALIFORNIA ASSOCIATION OF
REALTORS, INC.; JOHN LOMAC;
MARK MARCHAND; DIANNE
MCMILLAN; SHARE JACKSON; SCOTT
HUBAL; JUNE BARLOW,
            *Defendants-Appellees.*

No. 03-56588

D.C. No.
CV-03-00715
MJL/JAH

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted
February 16, 2005—Pasadena, California

Filed June 14, 2005

7057

Before: Alex Kozinski, Stephen S. Trott and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Kozinski

---

## COUNSEL

David Barry, Barry & Associates, San Francisco, California, for the plaintiffs-appellants.

Jeffrey M. Shohet and Stanley J. Panikowski, Gray Cary Ware & Freidenrich LLP, San Diego, California; Charles A. Bird, Luce, Forward, Hamilton & Scripps LLP, San Diego, California; Robert F. Semmer, Coughlan, Semmer & Lipman, LLP, San Diego, California; Cheryl A. Orr, Musick, Peeler & Garrett LLP, Los Angeles, California, for the defendants-appellees.

---

## OPINION

KOZINSKI, Circuit Judge:

We consider the applicability of *Noerr-Pennington* immunity to discovery misconduct.

### Facts

Realtor Arleen Freeman subscribes to a regional real-estate Multiple Listing Service (MLS) run by Sandicor, a corporation owned and managed by various local realtors' associations. Charging that Sandicor's MLS subscription fees were fixed at artificially high levels, Freeman sued Sandicor, the realtors' associations, and some of their officers and directors under the Sherman Act, 15 U.S.C. §§ 1, 2. The defendants in that litigation wrongfully withheld information in discovery. After the misconduct came to light, the district court granted new discovery and sanctioned the defendants, but it nonethe-

less granted their motion for summary judgment. On appeal, we affirmed in part and reversed in part. *Freeman* v. *San Diego Ass'n of Realtors*, 322 F.3d 1133 (9th Cir. 2003).

Freeman now brings a new antitrust action against some of the executives, lawyers and law firms of the associations involved in the previous litigation, and against the state realtors' association directly, based on the discovery misconduct that, she claims, involved subornation of perjury and intimidation of witnesses. Freeman argues that, by stretching out the litigation, the discovery misconduct postponed the day of judgment and thus extended Sandicor's price fixing. The district court dismissed the complaint with prejudice for failure to state a claim, based (among other grounds) on the *Noerr-Pennington* doctrine. Freeman appeals.[1]

## Analysis

**[1] 1.** The First Amendment aspect of antitrust law, the *Noerr-Pennington* doctrine, was first announced in *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), where the Supreme Court interpreted the Sherman Act, in view of "the right of the people . . . to petition the Government for a redress of grievances," U.S. Const. amend. I, to not cover political lobbying:

> To hold that the government retains the power to act in [its] representative capacity [to make laws that operate to restrain trade] and yet hold, at the same time, that the people cannot freely inform the gov-

---

[1]The complaint was filed as a separate action because the statute of limitations was about to run out and our mandate in the original case, which would have officially remanded the action, hadn't yet issued. Freeman requested that the district court classify the complaint as supplemental to the original case when it regained jurisdiction. The district court, however, did not consolidate the action with the original lawsuit, but continued to treat it as a separate lawsuit. Its dismissal is therefore a final judgment subject to appeal pursuant to 28 U.S.C. § 1291.

ernment of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act. . . . [S]uch a construction of the Sherman Act would [also] raise important constitutional questions. The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms.

365 U.S. at 137-38 (footnote omitted); *see also United Mine Workers* v. *Pennington*, 381 U.S. 657, 669-70 (1965). The doctrine extends to all three branches of government, and thus also exempts bringing a lawsuit—that is, petitioning a court— from antitrust liability. *See Cal. Motor Transp. Co.* v. *Trucking Unlimited*, 404 U.S. 508, 510 (1972).

**[2]** While *Noerr-Pennington* immunity is broad, it is not so broad as to cover all litigation: "Sham" petitions don't fall within the protection of the doctrine. *See Noerr*, 365 U.S. at 144; *Cal. Motor Transp.*, 404 U.S. at 511; *Prof'l Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56-57 (1993). We have recognized three circumstances when litigation might be sham:

> First, if the alleged anticompetitive behavior consists of bringing a single sham lawsuit (or a small number of such suits), the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships.
>
> Second, if the alleged anticompetitive behavior is the filing of a series of lawsuits, "the question is not whether any one of them has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal pro-

ceedings without regard to the merits and for the purpose of injuring a market rival."

Finally, in the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if "a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy."

*Kottle* v. *Northwest Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998) (citations omitted) (quoting *USS-POSCO Indus.* v. *Contra Costa County Bldg. & Constr. Trades Council*, 31 F.3d 800, 811 (9th Cir. 1994); *Liberty Lake Invs., Inc.* v. *Magnuson*, 12 F.3d 155, 159 (9th Cir. 1993)).

**[3]** *Noerr-Pennington* immunity, and the sham exception, also apply to defensive pleadings, *see In re Burlington N., Inc.*, 822 F.2d 518, 532-33 (5th Cir. 1987), because asking a court to deny one's opponent's petition is also a form of petition; thus, we may speak of a "sham defense" as well as a "sham lawsuit."

**[4] 2.** Because the *Noerr-Pennington* doctrine grows out of the Petition Clause, its reach extends only so far as necessary to steer the Sherman Act clear of violating the First Amendment. Immunity thus applies only to what may fairly be described as *petitions*, not to litigation conduct generally. A complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something, can be described as petitions without doing violence to the concept. But discovery is merely communication between parties as an aid to litigation. It is not in any sense a communication to the court and is therefore not a petition. *See Theofel* v. *Farey-Jones*, 359 F.3d 1066, 1078-79 (9th Cir. 2004) (noting that "[s]ubpoenaing private parties in . . . private . . . litigation" is

hardly petitioning). Nevertheless, "conduct incidental to" a petition is protected by *Noerr-Pennington* if the petition itself is protected. *Id.* at 1078 (internal quotation mark omitted); *cf. Noerr*, 365 U.S. at 143-44.

**[5]** In *Columbia Pictures Industries, Inc.* v. *Professional Real Estate Investors, Inc.*, 944 F.2d 1525 (9th Cir. 1991), *aff'd on other grounds*, 508 U.S. 49 (1993), we considered whether a refusal to settle a lawsuit could be actionable under the Sherman Act. We held:

> A decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit and not a separate and distinct activity which might form the basis for antitrust liability. Consequently, [defendant's] ability to establish that [plaintiffs'] refusal to [settle] violated the Sherman Act depends on its success or failure in showing that the [underlying lawsuit] is actionable under the federal antitrust laws.

*Id.* at 1528-29. Because the underlying lawsuit was not a sham, plaintiffs' refusal to settle could not support antitrust liability. Discovery, like settlement talks, is "conduct incidental to" a petition—in this case, incidental to the realtors' associations' defense against Freeman's lawsuit. Thus, whether this particular misconduct violates the Sherman Act depends on whether the defense as a whole would be actionable.

Discovery misconduct, subornation of perjury and witness intimidation are, of course, serious matters. Had they not been brought to light in time, it is entirely possible that they would so have infected the defense of the lawsuit as to make it a sham. But we need not decide that question today because it is clear that the defense here was not a sham.

**[6]** To apply the sham exception in the context of a defense, we look to the test for a sham lawsuit spelled out in the first

*Kottle* exception. *See* page 7062 *supra*. This two-part test contains both an objective and a subjective component. On the first prong, the defense was not "objectively baseless." "The existence of probable cause to institute legal proceedings"—a notion drawn from the common-law tort of wrongful civil proceedings—"precludes a finding that an antitrust defendant has engaged in sham litigation." *Prof'l Real Estate Investors*, 508 U.S. at 62. And here, there was probable cause, because defendants prevailed on their defense in the district court after the discovery misconduct was discovered, undone and sanctioned. *Cf. Prosser and Keeton on the Law of Torts* 894 (W. Page Keeton ed., 5th ed. 1984) ("A recovery by the plaintiff in the original action usually is regarded as conclusive evidence of the existence of probable cause, even though it is subsequently reversed, unless it can be shown to have been obtained by fraud or other imposition upon the court." (footnotes omitted)).

**[7]** On the second prong, there is no evidence that the defense as a whole was "a concealed attempt to interfere with the plaintiff's business relations." *See also Prof'l Real Estate Investors*, 508 U.S. at 60-61 ("Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor,' through the 'use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon.'" (quoting *Noerr*, 365 U.S. at 144 (emphasis added); *City of Columbia* v. *Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991)) (alteration in original). For a defense of a lawsuit to be a sham for purposes of the first *Kottle* exception, plaintiffs would have to show that the defense was not merely baseless, but aimed at interfering with their business by, for example, sapping their financial resources or distracting their attention.

**[8]** There was enough objective merit and subjective good faith in the defense of the original antitrust suit to cover it,

and the conduct incidental to it, with the *Noerr-Pennington* cloak.[2]

[9] **3.** The district court used *Noerr-Pennington* immunity (among other grounds) to dismiss the complaint as to the attorney defendants only; the complaint was dismissed as to the other defendants based on other theories. However, *Noerr-Pennington* immunity is not limited to lawyers: The First Amendment petition right belongs to the defendants in the original case, though their employees, law firms and lawyers, as their agents in that litigation, get to benefit as well. Indeed, a *Noerr-Pennington* case, such as *Professional Real Estate Investors*, need not involve claims against lawyers at all. *Noerr-Pennington* immunity is a sufficient ground to dismiss the complaint as to all defendants. We therefore affirm the district court's ruling as to the non-lawyer defendants on this alternative ground. *See New Kids on the Block* v. *News Am. Publ'g*, 971 F.2d 302, 305 (9th Cir. 1992) (we may affirm the district court's judgment on any ground fairly presented by the record before us).

**AFFIRMED.**

---

[2]Freeman further alleges that, on one occasion, the attorney defendants made false factual representations to the court. Compl. ¶ 37. Unlike Freeman's other allegations, which concern out-of-court misconduct, this one falls within the third *Kottle* exception, under which misrepresentations to the court make a petition a sham if they "deprive the litigation of its legitimacy." *See* page 7063 *supra*. Our conclusion that the defense as a whole was not a sham also establishes that this isolated instance of litigation misconduct would not, if proven, deprive the defense as a whole of its legitimacy.