# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOAN BROWN KEARNEY,
          *Plaintiff-Appellant,*

v.

FOLEY & LARDNER, LLP; GREGORY
V. MOSER; LARRY L. MARSHALL;
MICHAEL MCCARTY,
          *Defendants-Appellees.*

No. 07-55566

D.C. No.
CV-05-02112-L

ORDER
AMENDING
OPINION AND
DENYING THE
PETITION FOR
REHEARING AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted
October 22, 2008—Pasadena, California

Filed May 12, 2009
Amended September 18, 2009

Before: Harry Pregerson and Cynthia Holcomb Hall, Circuit
Judges, and David Alan Ezra,* District Judge.

Opinion by Judge David Alan Ezra

---

*The Honorable David Alan Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

13551

## COUNSEL

Joseph J. Wheeler, Jill M. Sullivan, Chapin Wheeler LLP, San Diego, California, for the appellant.

Seth M. Galanter, Michael V. Sachdev, Morrison & Foerster LLP, Washington, D.C., Mark C. Zebrowski, Morrison & Foerster LLP, San Diego, California, for appellees Foley & Lardner LLP, Larry L. Marshall, and Gregory V. Moser.

Daniel R. Shinoff, Paul V. Carelli, IV, Stutz Artiano Shinoff & Holtz, APC, San Diego, California, for appellee Michael T. McCarty.

## ORDER

The Opinion filed on May 12, 2009, is amended as follows: on the slip opinion at page 5653, insert a semicolon following

"Marshall." At page 5658, place a period after "we affirm the district court" and delete the balance of the sentence. On page 5672, delete section "a. Spoliation of Evidence" and replace it with:

### a. Spoliation of Evidence

Spoliation of evidence is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation."[5] *Hernandez v. Garcetti*, 68 Cal. App. 4th 675, 680 (Ct. App. 1998). However, Kearney's claims do not allege the destruction of or failure to preserve evidence, but instead contend that Appellants delayed in creating a written version of the evidence.

California courts have historically tried to limit the scope of this tort (to the point of nearly eradicating it), looking to policy concerns as well as the existence of other remedies to support those limits. *See Cedars-Sinai Med. Ctr. v. Sup. Ct.*, 74 Cal. Rptr. 2d 248, 252, 254-56. To the extent the tort continues to exist in California to address spoliation a party did not or could not have known about prior to the end of litigation,[6] reading *Hernandez*'s description of spoliation broadly enough to include this case would be out of step with that limiting principle. Furthermore, other remedies are available. The California Penal Code better describes the kind of conduct here, punishing criminally anyone who knows that a thing is about to be produced in evidence for a trial and then conceals it to keep it from being produced. *See* Cal. Penal Code § 135; *see Cedars-Sinai*, 74 Cal. Rptr. 2d at 254 (describing § 135 as an effective deterrent against wrongful conduct). The State Bar of California also could impose sanctions on Appellants. *See Cedars-Sinai*, 74 Cal. Rptr. 2d at 255. Finally, we note that

[5]Spoliation claims are exempted from the litigation privilege. Cal. Civ. Code § 47(b)(2).

[6]We take no position on this point.

this opinion leaves Kearney with another avenue for relief: her federal RICO claims against Appellants based on roughly the same conduct. Because "[w]e may affirm the dismissal on any ground supported by the record" and Kearney's complaint was not legally sufficient to sustain a favorable judgment on the claim for spoliation of evidence, *see Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (2002), we affirm the district court's decision to strike this claim.[7]

On page 5674, paragraph one: attach this sentence to the previous paragraph, place a period after "we affirm the district court," and delete the remainder of the sentence.

With these changes, Appellees' petition for rehearing is DENIED.

---

## OPINION

EZRA, District Judge:

Joan Kearney ("Kearney") appeals the district court's dismissal of the federal and state law claims she filed against a representative of the Ramona Unified School District ("RUSD") and the law firm that represented RUSD (collectively "Defendants") in an earlier eminent domain proceeding regarding her property. We have jurisdiction pursuant to 28 U.S.C. § 1291. As to Kearney's federal law claims, we vacate the district court's judgment and remand so that those claims may be heard. As to Kearney's state law claims, we affirm the district court.

---

[7]The district court rested its holding on the fact that the tort is not recognized when "the spoliation was or should have been discovered before the conclusion of the litigation." Given that there was some factual dispute as to whether Kearney discovered or should have discovered the evidence prior to or during the valuation trial, we do not affirm the district court's reasoning.

## I.  Background

## A.  Events Leading Up to the State Valuation Trial

We must begin, not with the case at hand, but with the earlier eminent domain proceedings from which Kearney's current claims arose.

Kearney is the former owner of a 52.06-acre parcel of property in Ramona, California. In June of 2000, RUSD initiated the condemnation process for that property. Pursuant to that, it hired Construction Testing & Engineering, Inc. ("CTE") to conduct a septic system assessment, including percolation testing, of Kearney's land and then issue a report with the results. Those results would reveal the number of residential lots the land could support, and thus determine the land's value.

CTE entered the property on December 12, 2000. On December 13, Kearney wrote RUSD that it must obtain her approval first. Two days later, Gregory Moser, of Foley & Lardner, LLP, replied on behalf of RUSD, requesting consent to enter to conduct percolation testing in exchange for a copy of the report generated. On December 26, Kearney's attorney responded, making disclosure of the report a condition of Kearney's consent. In late January and early February 2001, CTE completed its percolation testing. It did not prepare a formal report of the results.

In response to Kearney's March 2001 discovery request, RUSD produced no test results. Other documents produced suggested testing had been done. In his October 2001 deposition, Michael McCarty, RUSD's then-Business Manager, told Kearney's attorney that he thought testing had been done. Nonetheless, no results were produced.

## B.  The Valuation Trial and Subsequent Appeals

The trial to determine the property's value lasted from April 29 to May 9, 2002. Kearney's expert testified that,

based on the percolation tests performed on the property in 1996, the parcel could support up to sixteen residential lots, giving it a total value of $1.4 million. RUSD's expert appraised the property at $850,000, based on her understanding that it could support six to eight lots. Larry Marshall ("Marshall"), one of RUSD's attorneys, said in trial that no new percolation testing had been performed. The jury awarded Kearney $953,000 in compensation.

It was only after the trial that Kearney learned from a school expense itemization report that percolation testing had actually been performed. But even then, her May 2002 California Public Records Act ("CPRA") request for documents obtained no results. RUSD said it did not possess anything that had not been provided during discovery. It also said that, to the extent any documents existed in the offices of professionals it employed, the documents were exempt from CPRA. Kearney moved for a new trial based on the itemization report. The state trial court denied the motion. Kearney appealed.

While that appeal was pending, Kearney made another CPRA request and exchanged letters with Marshall. In one of these, Marshall said RUSD would waive its CPRA exemption. On November 12, 2002, it produced a copy of the testing results, saying the document had never been in RUSD's possession and was obtained after the trial. Kearney had RUSD's experts review the results, and they determined that the results were significant to valuation and supported a higher value for the property.

Kearney filed more motions for a new trial, but both were denied on jurisdictional grounds. Kearney appealed these as well. On March 3, 2004, the California Court of Appeal issued three opinions. One affirmed the trial court's dismissal of Kearney's motion for new trial, finding that Kearney failed to show that RUSD's assertions about the absence of testing denied her a fair trial and that she should have instead pursued

the evidence suggesting testing had been completed. The other two opinions affirmed the trial court's orders on the grounds that it lacked jurisdiction. The California Supreme Court denied review.

## C.   The Current Action

Having thus received no relief on valuation in state court, Kearney commenced the present action in federal court against RUSD's representative, the law firm that represented RUSD in the state proceedings, and two of that firm's lawyers, seeking relief for the conduct that led to that valuation. Her complaint alleged federal causes of action under RICO, conspiracy to violate RICO, and 42 U.S.C. § 1983. Her state causes of action included false promise, fraud and deceit, spoliation of evidence, and prima facie tort.

Defendants filed motions to dismiss. The district court granted them, dismissing Kearney's federal claims under the *Noerr-Pennington* doctrine because the conduct on which Kearney relied to establish liability was incidental to First Amendment-protected petitioning activity. The court further held that the complaint did not fit into the "sham exception" to that doctrine because Kearney had not supported the position that defendants' alleged intentional misrepresentations to the court "depriv[ed] the condemnation proceeding of its legitimacy." The court also dismissed Kearney's state claims under California's anti-SLAPP statute,[1] finding that defendants acted in furtherance of their rights to petition and that Kearney had not showed a probability of prevailing on the merits.

---

[1]"SLAPP is an acronym for 'strategic lawsuit against public participation.' " *Jarrow Formulas, Inc. v. La Marche*, 31 Cal. 4th 728, 732 n.1 (2003).

## II. Standard of Review

This Court reviews *de novo*: (1) a district court's dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), *Pack v. United States*, 992 F.2d 955, 957 (9th Cir. 1993); (2) a district court's dismissal based on the *Noerr-Pennington* doctrine, *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006); and (3) a district court's grant of a motion to strike under California's anti-SLAPP statute, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003).

## III. Discussion

### A. The *Noerr-Pennington* Doctrine

On appeal, Kearney argues that the *Noerr-Pennington* doctrine should not apply in this case because (1) this is not one of the limited situations in which government officials may receive immunity, and (2) Defendants' conduct was not petitioning conduct. Although we find both of these arguments unavailing, we are persuaded that the doctrine's sham litigation exception applies to her claims and prevents the immunization of Defendants' petitioning conduct.

**[1]** The *Noerr-Pennington* doctrine derives from the Petition Clause of the First Amendment and provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa*, 437 F.3d at 929. It initially emerged in the antitrust context. *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). Recognizing that the " 'right to petition extends to all departments of the government' " and includes access to courts, the Supreme Court extended the doctrine to provide immunity for the use of " 'the channels and procedures' " of state and federal courts to advocate causes. *Sosa*, 437 F.3d at 929-30 (quoting

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972)).

The Supreme Court has since held that *Noerr-Pennington* principles "apply with full force in other statutory contexts" outside antitrust. *Id.* at 930 (discussing *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002)). In *BE & K*, the Court held that the National Labor Relations Act ("NLRA") did not permit holding an employer liable for unsuccessfully prosecuting retaliatory lawsuits against employees who were exercising rights the NLRA protects. 536 U.S. 516. In doing so, the Court adopted a three-part test to determine whether the defendant's conduct is immunized: (1) identify whether the lawsuit imposes a burden on petitioning rights, (2) decide whether the alleged activities constitute protected petitioning activity, and (3) analyze whether the statutes at issue may be construed to preclude that burden on the protected petitioning activity. *See id.* at 530-33, 535-37.

**[2]** Not all petitioning activity is immunized, however. A "sham" exception to the doctrine developed to prevent the immunization of conduct that used "governmental process . . . as an anticompetitive weapon." *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998). The Ninth Circuit has held that a defendant's activities may fall into this exception if they include making intentional misrepresentations to the court that then "deprive[s] the litigation of its legitimacy." *Id.*

As an initial matter, Kearney claims that the doctrine was meant to protect a citizen's right to petition the government, and never intended to bar suit by a private citizen against government officials. In support of her argument, she cites *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090 (9th Cir. 2000), for the principle that the immunization of government officials or entities has been limited to cases in which those officials are lobbying other government officials on behalf of their constituents. She argues that a case of government initi-

ated litigation against a citizen does not fit within the rationale supporting immunity for lobbying.

[3] As a matter of first impression, the *Manistee* court held that *Noerr-Pennington* could apply to government entities or officials because the city officials' lobbying efforts amounted to a petition on behalf of citizens. *See id.* at 1093. There is no reason, however, to limit *Manistee*'s holding to lobbying efforts. In a representative democracy, the court recognized that branches of government often "act on behalf of the people" and "intercede" to "advance their constituents' goals, both expressed and perceived." *Id.* Such intercession is just as likely to be accomplished through lawsuits—the very act of petitioning—as through lobbying. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004). Furthermore, an eminent domain proceeding is consistent with the principles laid out in *Manistee*: a governmental entity acts on behalf of the public it represents when it seeks to take private property and convert it to public use. *Cf. New West, L.P. v. City of Joliet*, 491 F.3d 717, 721-22 (7th Cir. 2007) (holding that *Noerr-Pennington* applies to a municipality's condemnation action).

[4] We find that a governmental entity or official may receive *Noerr-Pennington* immunity for the petitioning involved in an eminent domain proceeding. The agents of that litigation—employees and law firms and lawyers—may benefit from the immunity as well. *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1186 (9th Cir. 2005). *Noerr-Pennington* may therefore protect Defendants here.

We now apply the doctrine and its sham exception to the case at hand.

### 1. Does Kearney's lawsuit burden Defendants' petitioning rights?

Though the district court did not address this issue explicitly, Kearney argues that her federal claims do not burden

Defendants' right to prosecute an eminent domain proceeding, but instead just challenge abuse of the process. She thus contends that, if her lawsuit were successful, it would not discourage future eminent domain proceedings, just fraudulent behavior in those lawsuits.

**[5]** However, the question at this stage is not whether the conduct at issue is fraudulent and abusive, but instead whether the success of Kearney's lawsuit would constitute a burden on petitioning rights. As *Sosa v. DIRECTV, Inc.,* 437 F.3d 923 (9th Cir. 2006)*,* illustrates, the lawsuit may burden conduct incidental to litigation. Even though the prelitigation settlement demands at issue there were not themselves litigation, they were part of the "breathing space required" for the effective exercise of petitioning rights. *Id.* at 933. Imposing liability for that conduct burdened DIRECTV's ability to avoid litigation through settlement. *Id.* at 932.

This question of burden is separate from the question of whether the conduct challenged included intentional misrepresentations or fraud. In *Sosa*, the plaintiff alleged that the letters amounted to extortion and fraud. *Id.* at 927. Yet the court did not address these allegations when determining the burden under the test's first step. Instead, it suggested that the question of whether there would be absolute immunity for conduct including intentional misrepresentations or fraud should be analyzed under the sham exception. *See id.* at 938 (declining to decide whether the exception applied since the plaintiff did not argue it)*.* Other cases have similarly found petitioning rights burdened even though the plaintiffs were alleging misconduct in that petitioning. *See BE & K Constr. Co. v. NLRB*, 536 U.S. 516 (2002) (finding that declaring an employer's lawsuit illegal burdens petitioning rights even though the lawsuit itself was retaliatory); *cf. Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180 (9th Cir. 2005) (finding that defendants who allegedly committed discovery misconduct in an earlier suit were protected by the *Noerr-Pennington* doctrine because the sham exception did not apply).

**[6]** Kearney alleges misconduct in events that occurred in the course of Defendants' petition on RUSD's behalf in eminent domain proceedings. It is undisputed that those proceedings represent a petition to the government. Her challenge to the discovery communications, interactions with expert witnesses and contractors, and statements to the court by RUSD's agents pursuant to those proceedings places a burden on RUSD's ability to bring such actions.

## 2. Do Defendants' alleged acts constitute protected petitioning activity?

Kearney alleges that Defendants suppressed the percolation test results, instructed CTE's engineers not to prepare a formal report of those results, and repeatedly misrepresented during trial that RUSD had not conducted percolation testing. None of these actions are petitions in and of themselves; they are not complaints, answers, counterclaims, or pleadings which make representations to the court. *See Freeman*, 410 F.3d at 1184.

**[7]** However, in order to "preserve the breathing space required for the effective exercise of the rights [the Petition Clause] protects," "conduct incidental to the prosecution of the suit" may also be immunized under the *Noerr-Pennington* doctrine. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933-34 (9th Cir. 2004) (internal quotation marks omitted). As the district court noted, this court has held that discovery is incidental to litigation and comes within the *Noerr-Pennington* doctrine if the underlying litigation is protected by the Petition Clause. *See Freeman*, 410 F.3d at 1185.

**[8]** Since we have already determined above that the underlying litigation here was protected, it follows that the misconduct Kearney alleges in the discovery communications surrounding that litigation and the trial advocacy of that litigation likewise comes within *Noerr-Pennington*. Kearney argues that, in so saying, we would be broadening the notion

of what conduct is "incidental" beyond what our precedents have recognized. We disagree and do not find "incidental" so narrow. Discovery communications have already been recognized as "incidental," *see Freeman*, 410 F.3d at 1185, and, like trial advocacy, are a "common . . . feature of modern litigation." *Sosa*, 437 F.3d at 936. Defendants' alleged instruction to CTE not to prepare a report with the test results is perhaps more far afield. However, the testing was completed in preparation for the valuation trial, and so statements to those completing the testing would be incidental to that litigation as well. *See id.* at 935-36 (discussing the protection of prelitigation communications).

Kearney presses further that *misconduct* could not be petitioning conduct or conduct incidental because misconduct is not essential to the petition. In so doing, she collapses the question of petitioning conduct with that of the sham exception's application. *See id.* at 938 ("Finding that the protections of the Petition Clause extend to [conduct] does not mean that the [conduct is] absolutely protected from liability."). We instead find the misconduct she alleges to be petitioning conduct and now turn to the sham exception to determine whether it might nonetheless be subject to liability.

### 3. Does the sham exception apply to Defendants' conduct?

**[9]** In *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998), the Ninth Circuit identified three circumstances in which the sham litigation exception might apply. Kearney argues for the third here: where the allegedly unlawful conduct "consists of making intentional misrepresentations to the court" and those misrepresentations or the "party's knowing fraud upon . . . the court deprive the litigation of its legitimacy." *Id.* We are persuaded that Defendants' alleged misconduct here was precisely the sort the sham exception was created to address.

**[10]** Since this matter arose on a motion to dismiss, Kearney's allegations must be assumed true. Kearney has alleged intentional misrepresentations to the court, and fraud upon the court through the suppression of evidence, that ultimately led to her property being valued lower than it should have been. In *Sosa v. DIRECTV, Inc.*, the court described a similar situation of a RICO suit predicated on "fraudulent discovery conduct in prior litigation that induced the plaintiffs to settle the suit for a lower amount than they would have in the absence of the fraud." 437 F.3d 923, 940 (9th Cir. 2006) (discussing *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005)). Although *Living Designs* was not considered under *Noerr-Pennington*, the *Sosa* court said "the conduct alleged quite clearly fell within the third prong of *Kottle*'s sham litigation exception, in that it amounted to a 'knowing fraud . . . upon the court depriv[ing] the litigation of its legitimacy.' " *Id.* (quoting *Kottle*, 146 F.3d at 1060). Kearney's allegations are very similar to those described by the *Sosa* court in *Living Designs* and so should also fall within the third prong of the sham litigation exception. *See also Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) ("Had [the discovery misconduct] not been brought to light in time, it is entirely possible that [it] would so have infected the defense of the lawsuit as to make it a sham.").

The district court found that the exception did not apply because Kearney did not "support[ ] her position that defendants made intentional misrepresentations to the court thereby depriving the court of its legitimacy." The requirement of "support" suggests the court was not taking her allegations as true. At the motion to dismiss stage, it was error to require such support.

If, however, the court was actually faulting Kearney for insufficiently specific allegations, this could be a proper basis for denying the sham litigation exception. *See Kottle*, 146 F.3d at 1063 ("[W]hen a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment,

the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." (internal quotation marks omitted)). In *Kottle*, the court suggested the required specifics would include such things as "exactly what representations [defendant] made, or to whom; with whom [defendant] conspired; [and] what exactly its 'improper and/or unlawful' methods of advocacy were." *Id.* The district court did not indicate that it found any of these specifics lacking. Kearney's complaint includes the required specifics with extensive factual descriptions.[2] Thus, Kearney's allegations are appropriate under *Kottle*.

Instead of looking to Kearney's allegations, the district court's ruling seems based in large part on its belief that Kearney did not do enough to discover the test results she sought from Defendants. It is unclear why Kearney's behavior on this point should matter since the *Noerr-Pennington* doctrine is concerned with the immunization of petitioning conduct and strips immunization in certain cases where a sham is perpetrated by that petitioner. *See Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1261 (9th Cir. 1982) (holding there is "no first amendment protection for furnishing with predatory intent false information to an . . . adjudicative body"). Thus, the concerns behind the doctrine have everything to do with the petitioner and little to do with the other party's conduct. Even if, as the court found, Kearney could have done more to discover the test results, the sufficiency of Kearney's efforts is a question of fact not properly dealt with at the pleading stage, and does nothing to negate allegations of Defendants' misrepresentations to the court and jury on the central issue in the litigation.

---

[2]The specificity of these, as well as the fact that the misrepresentations alleged go to the central issue of the valuation litigation, make Defendants' argument that Kearney alleged insufficient "isolated" instances unpersuasive.

**[11]** We therefore find that the district court erred in holding the sham litigation exception did not apply to Kearney's allegations, and remand for consideration of her federal claims.

## B.  The Anti-SLAPP Statute

**[12]** The anti-SLAPP statute establishes a procedure to expose and dismiss meritless and harassing claims that seek to chill the exercise of petitioning or free speech rights in connection with a public issue. *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005). Analysis of an anti-SLAPP motion to strike involves a two-step process. First, the defendant must show that the cause of action arises from "any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . . " Cal. Code Civ. P. § 425.16(b)(1).[3]

If the court determines that the defendant has met this burden, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the merits. *DuPont Merck Pharm. Co. v. Superior Court*, 78 Cal. App. 4th. 562, 567 (Ct. App. 2000). To establish a probability of prevailing, the plaintiff must show that "the complaint is both legally suf-

---

[3]Such an act is defined within the same statute to mean:

  (1)  any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal.  Code Civ. P. § 425.16(e).

ficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (2002) (internal quotation marks omitted).

Kearney initially argues that applying the anti-SLAPP statute to her claims goes against the purpose of that statute. Her contentions here are similar to those she made regarding the application of the *Noerr-Pennington* doctrine to government officials. For similar reasons we find her arguments unpersuasive: Kearney's arguments ignore the fact that Defendants, as agents of RUSD, were petitioning on behalf of the citizenry by seeking to take private land for public use. *See Bradbury v. Superior Court*, 57 Cal. Rptr. 2d 207, 211 (Ct. App. 1996) (holding that governmental entities and their representatives are included in the anti-SLAPP statute's protection of petitioning rights).

We thus proceed to the analysis of the anti-SLAPP motion to strike.

### 1. An Act in Furtherance of Petitioning or Free Speech Rights

As to the first inquiry, Kearney contends that her state claims are not based on conduct either in a judicial proceeding or in connection with an issue under consideration by a judicial body. The state claims are based on the same conduct as the federal claims, and, just as we found above in relation to the federal claims, we here hold that Kearney's state claims are based on conduct "in furtherance of the exercise of the constitutional right of petition." Cal. Code Civ. P. § 425.16(e)(4).

Kearney's arguments to the contrary are not persuasive. The fact that some claims are based on events which took place prior to the initiation of the condemnation action does not prevent that conduct from being protected by the anti-

SLAPP statute. *See Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999) (finding that § 425.16's definition includes "communications preparatory to or in anticipation of the bringing of an action or other official proceeding" (internal quotation marks omitted)). The fact that the claims allege misconduct also does not keep Defendants' acts from being in furtherance of petitioning. *See Taheri Law Group v. Evans*, 72 Cal. Rptr. 3d 847, 852-53 (Ct. App. 2008) (finding that the cause of action arose from protected activity when it concerned an improper solicitation of another attorney's client).

The "critical point is whether the plaintiff's cause of action was itself *based on* an act in furtherance of the defendant's right of petition . . . ." *Peregrine Funding, Inc. v. Sheppard, Mullin, Richter & Hampton LLP*, 35 Cal. Rptr. 3d 31, 38 (Ct. App. 2005). Kearney's state claims are based on Defendants' communications with Kearney regarding the testing that would be done in preparation for the eminent domain proceeding and disclosures in an ongoing lawsuit, as well as its communications with its expert witnesses and testing contractor. All of these actions were in furtherance of the condemnation proceeding. *See id.* at 40 (finding conduct including refusing to allow a witness to testify, making threats, and withholding documents to be in furtherance as "litigation tactics . . . employed to benefit [the client's] position in an ongoing lawsuit"). The district court therefore did not err in finding that Defendants had met their burden on this issue.

## 2.  Probability of Prevailing on the Merits

Because we find the first requirement of an anti-SLAPP motion met, we now turn to the second requirement. Kearney argues that she stated valid claims as to spoliation of evidence and *prima facie* tort.[4]

---

[4]It is not clear whether Kearney contests the district court's finding that she did not show a probability of prevailing on her fraud claim. She does

### a. Spoliation of Evidence

Spoliation of evidence is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation."[5] *Hernandez v. Garcetti*, 68 Cal. App. 4th 675, 680 (Ct. App. 1998). However, Kearney's claims do not allege the destruction of or failure to preserve evidence, but instead contend that Appellants delayed in creating a written version of the evidence.

California courts have historically tried to limit the scope of this tort (to the point of nearly eradicating it), looking to policy concerns as well as the existence of other remedies to support those limits. *See Cedars-Sinai Med. Ctr. v. Sup. Ct.*, 74 Cal. Rptr. 2d 248, 252, 254-56. To the extent the tort continues to exist in California to address spoliation a party did not or could not have known about prior to the end of litigation,[6] reading *Hernandez*'s description of spoliation broadly enough to include this case would be out of step with that limiting principle. Furthermore, other remedies are available. The California Penal Code better describes the kind of conduct here, punishing criminally anyone who knows that a thing is about to be produced in evidence for a trial and then conceals it to keep it from being produced. *See* Cal. Penal Code § 135; *see Cedars-Sinai*, 74 Cal. Rptr. 2d at 254 (describing § 135 as an effective deterrent against wrongful conduct). The State Bar of California also could impose sanctions on Appellants. *See*

not discuss her likelihood of prevailing on the merits, but does discuss the application of the *Noerr-Pennington* doctrine and the California litigation privilege to bar that fraud claim. To the extent she is contesting the disposition of the fraud claim, we find that the district court properly found that the California litigation privilege barred the claim, as described under the *prima facie* tort section.

[5]Spoliation claims are exempted from the litigation privilege. Cal. Civ. Code § 47(b)(2).

[6]We take no position on this point.

*Cedars-Sinai*, 74 Cal. Rptr. 2d at 255. Finally, we note that this opinion leaves Kearney with another avenue for relief: her federal RICO claims against Appellants based on roughly the same conduct. Because "[w]e may affirm the dismissal on any ground supported by the record" and Kearney's complaint was not legally sufficient to sustain a favorable judgment on the claim for spoliation of evidence, *see Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (2002), we affirm the district court's decision to strike this claim.[7]

### b. *Prima Facie* Tort

The district court found Kearney had not showed a probability of success on the merits here because it found the claim barred by both the *Noerr-Pennington* doctrine and California's litigation privilege and because it was unpersuaded to apply the *prima facie* tort claim as had been done in the case law cited by Kearney.

As analyzed above, the *Noerr-Pennington* doctrine does not bar this suit because, even if the doctrine applied, the sham exception would also apply.

Nonetheless, we find that the district court did not err when it held that California's litigation privilege would bar Kearney's claims. Though Kearney argues that her claims are based on conduct prior to the litigation, the district court was correct that even allegations of such conduct may be privileged if reasonably related to the action. *See People ex rel. Gallegos v. Pacific Lumber Co.*, 158 Cal. App. 4th 950, 958 (Ct. App. 2008) ("[T]he privilege is not limited to statements

---

[7]The district court rested its holding on the fact that the tort is not recognized when "the spoliation was or should have been discovered before the conclusion of the litigation." Given that there was some factual dispute as to whether Kearney discovered or should have discovered the evidence prior to or during the valuation trial, we do not affirm the district court's reasoning.

made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (internal quotation marks omitted)). Because the alleged misconduct is all reasonably related to the eminent domain proceeding, it is subject to the litigation privilege bar.

## IV.    Conclusion

For the foregoing reasons, we vacate the district court's judgment as to Kearney's federal law claims. Because *Noerr-Pennington* immunity does not apply to Defendants' actions, we remand so that the court may consider Kearney's claims. As to Kearney's state law claims, we affirm the district court.

**Affirmed in part and vacated and remanded in part.**