NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 18 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DICKINSON FROZEN FOODS, INC.,

Plaintiff-Appellant,

v.

FPS FOOD PROCESS SOLUTIONS
CORPORATION,

Defendant-Appellee.

No.    22-35832

D.C. No. 1:17-cv-00519-MMB

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Idaho
M. Miller Baker, International Trade Judge, Presiding

Argued and Submitted September 11, 2023
Seattle, Washington

Before: HAWKINS, W. FLETCHER, and R. NELSON, Circuit Judges.
Dissent by Judge HAWKINS.

Dickinson Frozen Foods, Inc. purchased an industrial-grade freezer from FPS

Food Process Solutions Corporation.  Dickinson also contracted with Kemper

Northwest, Inc. to design and install a refrigeration system to power the freezer.  The

freezer from FPS was supposed to produce 8,000 pounds of frozen diced and

shredded potatoes an hour but failed to perform as expected—it froze only 4,000

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

pounds an hour. And it only worked for six hours at a time before it stopped working due to excessive ice and frost buildup. Dickinson notified FPS of the freezer's performance issues, and several times over the next year, FPS sent technicians to inspect, troubleshoot, and, if necessary, repair the freezer.

Those efforts failed. In the months before the case's filing, Dickinson sent three letters to FPS relevant to the freezer's removal. The first letter, sent in July 2017, informed FPS that Dickinson would be installing a replacement freezer and that it would "continue to operate [the FPS freezer], even in its unsatisfactory condition, so as to limit . . . damages," until the replacement freezer arrived, at which point Dickinson would "make arrangements for FPS to take back possession of the defective" freezer. The second letter, sent in October 2017, explained that Dickinson "anticipat[ed] having the Freezer removed in January, 2018" and that it sought FPS's "full cooperation by coordinating the exact dates" and reaching an "agreement on the vendor FPS"—not Dickinson—planned to "use for the removal." Finally, the third letter, sent the day after Dickinson filed suit, told FPS for the first time that *Dickinson* planned to remove the freezer in a "multi-day process" starting just three weeks later. In that letter, Dickinson gave FPS the opportunity "at its own expense, to arrange for pick-up of the uninstalled Freezer Machine," but it also told FPS that, if FPS elected to remove the machine, FPS would be "obligated to preserve it as evidence during the pendency of Dickinson's dispute with FPS."

2

Faced with a freezer that failed to adequately freeze its products, Dickinson sued FPS for breach of contract, breach of express warranty, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.

Dickinson proceeded with its removal of the freezer. Though FPS tried to observe the removal by sending representatives to the site, Dickson refused to allow FPS's representatives to observe the removal process. While Dickinson was uninstalling the freezer, it "altered, if not destroyed" both the freezer and the refrigeration system. In response, the district court imposed a sanction requiring the future jury to assume that, had FPS been given an opportunity to inspect the freezer, it would have been able to show that the freezer "was capable of performing at the levels specified by the Parties' Agreement." It later granted summary judgment to FPS. The district court also imposed sanctions against Dickinson for failing to adequately notify FPS about depositions. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

1. Dickinson spoliated evidence. Parties to litigation have a duty to preserve evidence that kicks in once a party has "some notice" that evidence will be "potentially relevant to the litigation." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015) (citation omitted). Once a party has such notice, it engages in spoliation if it "destr[oys] or significant[ly] alter[s]" the evidence or if it fails "to preserve property for another's use as evidence, in pending or future litigation."

3

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citation omitted). "Upon a finding of spoliation, the district court ha[s] discretion to impose sanctions pursuant to its inherent power." *Ryan*, 786 F.3d at 766. "We review the district court's imposition of spoliation sanctions for an abuse of discretion," and we review its "factual findings, including findings of bad faith and prejudice," for "clear error." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 957–58 (9th Cir. 2006).

Dickinson knew that it had a duty to preserve the freezer and the refrigeration system. It explained as much in its letter to FPS telling FPS that if FPS collected and destroyed the freezer and refrigeration system, it "may constitute spoliation of evidence or subject FPS to sanctions." And Dickinson itself conducted tests on the freezer five days before it disassembled the unit. Dickinson did not discharge its duty to preserve the freezer and the refrigeration system by sending letters to FPS. Only the third letter—sent three weeks before removal—told FPS that Dickinson planned to remove the freezer itself. And even that letter did not notify FPS that Dickinson would *destroy* the evidence in the process of removal—to the contrary, it told FPS that FPS would have a duty to preserve the freezer if it took control of it.[1]

2.    The district court did not abuse its discretion when it imposed the non-

---

[1] Because we agree with FPS that Dickinson did not put FPS on notice of the freezer's potential destruction, we have no need to adopt or reject the reasoning of the Wisconsin Supreme Court in *American Family Mutual Insurance Co. v. Golke*, 768 N.W.2d 729 (Wis. 2009).

rebuttable jury instruction as a sanction for destroying the freezer and the refrigeration system. "A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002) (citation omitted). The district court did not abuse its discretion in applying *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995), to conclude that a less harsh sanction than dismissal was warranted. And its finding that FPS was prejudiced by the destruction of the freezer and the inability to inspect the freezer "after [the] lawsuit is filed" was not clearly erroneous.[2] It thus had the discretion to impose the jury instruction. While the instruction proved fatal to two of Dickinson's claims against FPS on summary judgment, two other claims failed because Dickinson forfeited them after the parties agreed that they were pre-empted.

Our dissenting colleague acknowledges that our conclusion as to the pre-empted claims is "technically accurate." But he faults us for not considering that those claims could also have failed because of the jury instruction. This is incorrect—if the claims are federally pre-empted, then they would fail on their own terms, regardless of the sanction. We disagree with Dickinson and the dissent that

---

[2] Dickinson claims that the district court improperly required it to disprove prejudice. We need not consider who carries that burden, as the district court also found that FPS had established prejudice.

5

the instruction was a case-ending sanction when two of the four claims were meritless on their own terms and those claims have not been appealed.[3]

3.    Dickinson also appeals the award of attorney's fees under Federal Rule of Civil Procedure 37(a)(5) and other sanctions under Federal Rule of Civil Procedure 32(a)(5) to FPS.  Rule 37(a)(5)(A) provides that, if a court grants a protective order, it "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  The general rule yields, however, if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action."  Fed. R. Civ. P. 37(a)(5)(A)(i).  In such cases, the district court cannot order the payment of fees.  Rule 32(a)(5) provides that "[a] deposition must not be used against a party who, having received less than 14 days' notice of the deposition, promptly moved for a protective order" if the "motion was still pending when the deposition was taken."

The district court concluded that FPS made good-faith attempts to obtain the relief it sought from the protective order, and the record supports that conclusion

---

[3] We also reject any suggestion that the jury instruction may have been acceptable if it were permissive, rather than mandatory.  Dickinson's spoliation deprived FPS of the chance to inspect the freezer with an eye toward the pending litigation.  A jury with a permissive instruction would have been forced to weigh Dickinson's evidence unrebutted by contrary evidence from FPS.  Such a result would inherently prejudice FPS's defense.  It would be no answer to tell the jury that—although it heard nothing from FPS—it could, if it wanted, issue a verdict in FPS's favor.

based on the communications FPS had with Dickinson.  Because the good-faith determination is supported by the record, it was not clearly erroneous.  Given that finding, Rule 37(a)(5) required the district court to impose attorney's fees to cover the costs of moving for a protective order.  And because FPS's motion for a protective order was pending when the depositions were taken, Rule 32(a)(5) forbid Dickinson from using the depositions against FPS.

**AFFIRMED.**

FILED

OCT 18 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

HAWKINS, Circuit Judge, dissenting:

Exercising its discretion to police a discovery violation, the district court determined that a "less harsh sanction than dismissal" was appropriate. In spite of this determination, it chose a sanction that effectively and actually terminated the case. I respectfully dissent on that basis.

We review the district court's imposition of sanctions for abuse of discretion. *Barber v. Miller*, 146 F.3d 707, 709 (9th Cir. 1998). An abuse of discretion is "a judgment that is clearly against the logic and effect of the facts as are found." *Wing v. Asarco Inc.*, 114 F.3d 986, 988 (9th Cir. 1997). Even where dismissal seems inappropriate on the facts of a case, "we do not disturb the district court's choice of sanction unless we have a 'definite and firm conviction that [it] committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (quoting *Yourish v. Cal. Amplifie*r, 191 F.3d 983, 992 (9th Cir.1999)) (internal quotation marks and citation omitted). In my view, the mandatory nature of the jury instruction clearly went against the logic and effect of the district court's express intention not to issue case-terminating sanctions.

After properly applying the *Anheuser-Busch* factors to relevant evidence, the district court found that "under [the] circumstances, . . . a less harsh sanction than

dismissal is appropriate." Yet, the jury instruction it fashioned effectively decided the case in FPS's favor. In relevant part, the instruction *required* the jury "to presume that had Dickinson not destroyed the FPS Freezer and Refrigeration System, FPS would have been able to prove that the FPS Freezer was capable of performing at the levels specified by the Parties' Agreement." Whether the freezer performed as specified by the parties' agreement was the sole dispute in this lawsuit. The jury instruction did not tell the jurors they *could* resolve this dispute in FPS's favor. It told them they *must*.[1]

Nevertheless, the majority finds the instruction was not case terminating because, although it "proved fatal to two of Dickinson's claims against FPS on summary judgment, two other claims failed because Dickinson forfeited them after the parties agreed that they were pre-empted." Respectfully, I disagree. While this characterization of the summary judgment order is technically accurate, it does not prevent the instruction from terminating the case.

Dickinson brought four claims against FPS: breach of contract, breach of express warranty, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. As the majority notes, the district court granted summary

---

[1] To be clear, my position is not that the jury instruction necessarily would have been acceptable if it were permissive rather than mandatory. The district court's order should be vacated because the sanction it employed rests on a clear error in judgment that goes against the facts as they existed when the decision was issued.

judgment on Dickinson's breach of contract and promissory estoppel claims because it found the mandatory jury instruction foreclosed them. The unrelated reason the district court granted summary judgment on the express warranty and good faith and fair dealing claims was that Dickinson failed to address them in its response to FPS's motion.

Dickinson apparently took this approach because the parties agreed these claims were pre-empted by federal law. With that understanding in mind, Dickinson sought to voluntarily dismiss them but was not allowed to do so under Federal Rule of Civil Procedure 41(a). After addressing this procedural point, the district court construed Dickinson's failure to respond to FPS's motion "as a tacit admission that those claims are without merit."

This reasoning never mentions the jury instruction. But Dickinson's tactical misjudgment does not cure the clear error underpinning the court's earlier decisions. In its reconsideration order, the district court expressed its judgment that the "adverse inference instruction only presumptively ends Dickinson's ability to establish its breach of contract claim" because it was the only claim that relied solely on the parties' written agreement. According to the district court, "[a]t this point, Dickinson can still claim that FPS breached an express warranty under Idaho law, can argue it was damaged under a good faith and fair dealings theory, and can attempt to assert promissory estoppel against FPS." But Dickinson could not.

3

The claims are supported by essentially the same facts—indeed, there is not a single fact pleaded in the express warranty and good faith and fair dealing claims that is not also pleaded in either the breach of contract or promissory estoppel claims. Further, Dickinson's express warranty and contract claims advance a common theory of breach. The district court found this theory was foreclosed by the mandatory jury instruction. If the only legal argument supporting Dickinson's express warranty claim was foreclosed, the claim was necessarily foreclosed as well. Dickinson's good faith and fair dealing claim also would have failed in light of the instruction.[2]

For those reasons, the jury instruction defeated Dickinson's claims. The district court anticipated this problem in its reconsideration order, however. There, the court explained that even if the instruction impacted all of Dickinson's claims, it was not a constructive dismissal because "unlike dismissal, the Sanctions Order

---

[2] When the district court considered the mandatory jury instruction's impact on Dickinson's good faith and fair dealing claim, it did not address whether it was preempted. The court's apparent belief (as expressed in its reconsideration order) was that Dickinson could bring that claim despite the instruction. This was erroneous. The complaint stated, "Defendant failed to exercise good faith or deal fairly with Dickinson in repeatedly failing to remedy the defective performance and non-conformities in the Freezer." The district court's position was that "under [the] instruction, whatever the terms of the parties' agreement were, the freezer could perform as required by those terms." Thus, there was simply no permissible basis from which the jury could find that the freezer suffered from any defective performance issues or non-conformities that FPS failed to remedy.

allowed Dickinson the opportunity to amend, to attempt to negotiate a settlement, or to seek reconsideration."

This conclusion is erroneous in several respects. To start, the availability of settlement negotiations does not impact whether litigants have a live case or controversy in federal court. Additionally, the district court denied Dickinson's request for reconsideration and its subsequent motion to amend the complaint. Moreover, in its summary judgment order, the district court noted that "even if the court had allowed Dickinson to amend its complaint to assert this theory *and* the parties' purported unwritten agreement that the freezer would operate for 20–22 hours per day were considered an entirely separate agreement (rather than simply an unwritten term of the parties' purchase and sale agreement), the mandatory jury instruction forecloses it." Despite the district court's apparent belief to the contrary, none of the legal mechanisms it mentioned remedied the jury instruction's case-terminating effect.

The majority nevertheless remains unpersuaded "that the instruction was a case-ending sanction when two of the four claims were meritless on their own terms and those claims have not been appealed." But this conclusion misses the larger point. In substance, the mandatory jury instruction did not just foreclose the four claims in the complaint; it foreclosed *any* claims Dickinson might have raised. Every legal claim (or potential claim) in this case turned on the resolution of one

fundamental fact question: Did the freezer work as FPS promised? The jury instruction provided the answer.

Of course, Dickinson brought claims that failed for procedural reasons and were also likely pre-empted. But even if Dickinson made no mistakes, the jury instruction meant it could never win its case. The district court did not think the instruction had that effect. It was wrong. Accordingly, I am of the "definite and firm conviction" that the district court committed a clear error of judgment in its reconsideration and sanctions orders. I would, therefore, vacate the district court's sanctions, reconsideration, and summary judgment orders and remand the case for a trial on the merits.