**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LYUDMYLA PYANKOVSKA,
personally and mother and next friend
of Aleskandr A Abid, a minor child,
and as mother and next friend of
Irynas S Nezhurbida a minor child,

       *Plaintiff-Appellant*,

 and

RICKY MARQUEZ,

       *Plaintiff*,

  v.

SEAN ABID; JOHN JONES,

       *Defendants-Appellees*,

 and

ANGELA ABID,

       *Defendant*.

No. 20-16294

D.C. No.
2:16-cv-02942-
JCM-BNW

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted November 10, 2022
Pasadena, California

Filed April 18, 2023

Before: Mary H. Murguia, Chief Judge, and Barrington D.
Parker[*] and Kenneth K. Lee, Circuit Judges.

Opinion by Judge Parker

## SUMMARY[**]

## Wiretap Act

The panel vacated the district court's judgment dismissing Lyudmyla Pyankovska's claims against John Jones as barred under the *Noerr-Pennington* doctrine and entering default judgment against Sean Abid in a wiretap case.

Pyankovska alleged federal and wiretap violations and state common law claims against Abid, her ex-husband, and

---

[*]The Honorable Barrington D. Parker, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Jones, his attorney. She alleged that during a child custody proceeding in Nevada state court, Abid had secretly recorded conversations between her and their child, and that Jones had filed selectively edited transcripts of the illegally recorded conversations on the state court's public docket.

The district court concluded that Jones's alleged conduct involved First Amendment petitioning activity, which is protected by the *Noerr-Pennington* doctrine. The district court entered default judgment against Abid on the grounds that his responses to various discovery requests were knowingly inaccurate and that he had proceeded in bad faith. The district court awarded Pyankovska $10,000 in statutory damages under the Federal Wiretap Act, but it did not award punitive damages or litigation costs, nor did it discuss or award other categories of damages ostensibly available on her Nevada common-law claims.

The panel held that Jones violated the Federal Wiretap Act, and it agreed with the district court that the vicarious-consent doctrine did not apply and that Jones's conduct was not protected under *Bartnick v. Vopper*, 532 U.S. 514 (2001), which carves out a narrow First Amendment exception to the Federal Wiretap Act for matters of public importance. The panel further held, however, that Jones's conduct was not protected under the *Noerr-Pennington* doctrine. The panel concluded that Pyankovska's lawsuit did not impose a burden on petitioning rights because Abid prevailed in the state court custody case, and Jones had no petitioning "right" to use the transcripts. The panel held that filing illegally obtained evidence on a public court docket is conduct not immunized under *Noerr-Pennington*, and the Federal Wiretap Act unambiguously applied to Jones's conduct.

The panel held that the district court incorrectly computed statutory damages under the Federal Wiretap Act because it did not consider whether Abid violated the statute for more than 100 days, which would render the amount of damages greater than $10,000. In addition, the district court failed to adequately address other categories of damages to which Pyankovska might be entitled, including punitive damages, attorney's fees, and damages on Nevada common-law claims.

The panel vacated the district court's judgment and remanded for further proceedings.

## COUNSEL

Brian Wolfman (argued), Madeline H. Meth, and Hannah Mullen, Attorneys; Radiance Campbell, Alessandra Marie Lopez, Lois Zhang, Matthew Calabrese, Holly Petersen, and Nathan Winshall, Certified Law Students; Georgetown Law Appellate Courts Immersion Clinic; Washington, D.C.; for Plaintiff-Appellant.

Todd E. Kennedy (argued), Kennedy & Couvillier PLLC, Las Vegas, Nevada, for Defendant-Appellee John Jones.

Alex Ghibaudo (argued), Alex B. Ghibaudo PC, Las Vegas, Nevada, for Defendant-Appellee Sean Abid.

## OPINION

PARKER, Circuit Judge:

In December 2016, Lyudmyla Pyankovska sued her ex-husband, Sean Abid, and his attorney, John Jones, in the United States Court for the District of Nevada alleging federal and state wiretap violations as well as various state common law claims. She alleged that during a bitter child custody proceeding in Nevada state court, her ex-husband had secretly recorded conversations between her and their child, and that Jones had filed selectively edited transcripts of the illegally recorded conversations on the court's public docket. She sought statutory damages as well as other relief. The district court granted Jones's Rule 12(b)(6) motion to dismiss the claims against him, concluding that Jones's conduct involved First Amendment petitioning activity, which is protected by the *Noerr-Pennington* doctrine.[1]

The district court allowed Pyankovska's claims against Abid to go forward. As discovery proceeded, the district court concluded that Abid's responses to various discovery requests were knowingly inaccurate and that he had proceeded in bad faith. The district court ultimately entered default judgment against him and proceeded to an assessment of damages. The court awarded Pyankovska $10,000 in statutory damages under the Federal Wiretap Act but did not award punitive damages or litigation costs, nor

---

[1] The *Noerr-Pennington* doctrine, derived from two Supreme Court cases, requires courts to construe ambiguous statutes to avoid burdening petitioning activity protected by the First Amendment. *See United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021).

did it discuss or award other categories of damages ostensibly available on her Nevada common-law claims.

On appeal, Pyankovska argues that when dismissing her claims against Jones, the district court erroneously applied *Noerr-Pennington* and miscalculated damages. We agree and we reverse. We conclude that filing illegally obtained evidence on a public court docket is conduct not immunized under *Noerr-Pennington.* We also hold that the district court incorrectly computed statutory damages and failed to adequately address other categories of damages to which Pyankovska might be entitled.

## I.

At the center of this case is a highly acrimonious family law dispute. Pyankovska and Abid divorced in 2010 and the Nevada state court awarded them joint legal and physical custody of their child. Their relationship continued to deteriorate and in 2015, Pyankovska filed a motion for contempt of court against Abid to modify their custody arrangement and for various other relief. While the motion was pending, Abid inserted a recording device into their child's backpack and surreptitiously recorded around twenty hours of private conversations between the child and Pyankovska in her home and car. Neither Pyankovska nor the child knew that Abid was recording their conversations. After obtaining the recordings, Abid used software to edit and transcribe the recordings that he deemed useful in the custody dispute and destroyed the original recordings.

Abid gave the transcripts of the recordings to his family-law attorney, Jones. Jones submitted the transcripts to the state court on the public docket as exhibits to Abid's declaration in support of his countermotion to modify the custody arrangement. Pyankovska objected to the public

disclosure of the transcripts, arguing that they had been illegally obtained and could not be publicly disclosed. Jones, on the other hand, argued that the submissions were lawful because Abid was able to consent to the recordings on behalf of his minor child under the vicarious-consent doctrine, a species of "consent" he argued was an exception to the otherwise broad ban under federal and Nevada law on the disclosure and use of illegally obtained wiretap communications.[2]

The state court concluded that the vicarious-consent doctrine did not apply because the recordings occurred in Pyankovska's home and Abid neither had physical custody nor a good-faith basis for asserting vicarious consent. Although the state court held that the recordings could not be used as independent evidence, the court allowed the recordings to be provided to a psychologist appointed by the court to assist it in resolving the custody motion. The psychologist, relying in part on the transcripts, concluded that Pyankovska's behavior was "creating confusion, distress, and divided loyalty in the child." *Abid v. Abid*, 406 P.3d 476, 478 (2017) (internal quotation omitted). After considering the psychologist's testimony and other evidence, the court awarded Abid primary physical custody of the child. *Id.* at 772.

Pyankovska appealed to the Nevada Supreme Court, where Abid again prevailed. The court acknowledged that "[b]ecause neither the child nor the mother consented to this recording, the father's actions likely violated NRS 200.650,

---

[2] Under the vicarious-consent doctrine, a parent with physical custody of a child may record conversations to which the child is a party. *See, e.g.*, *Pollock v. Pollock*, 154 F.3d 601, 607 (6th Cir. 1998).

which prohibits the surreptitious recording of nonconsenting individuals' private conversations." *Id.* at 477. The Nevada Supreme Court, however, concluded that the controlling question was "whether the [state] court abused its discretion by providing the recordings to a psychologist appointed by the court to evaluate the child's welfare." *Id.* On this issue, the Nevada Supreme Court held that the state court "did not abuse its discretion in providing the recordings to the expert because reviewing them furthered the expert's evaluation of the child's relationship with his parents and aided the [state] court's determination as to the child's best interest." *Id.* at 481–82.

The Nevada Supreme Court clarified that it was expressing no opinion as to the legality of Abid's conduct. *Id.* at 479. The court reasoned that, even if the recordings were obtained illegally, any alleged illegality did not render them per se inadmissible in a child custody proceeding where the paramount concern was the "best interests" of the child. *Id.* The court specified that "we by no means condone [Abid's] actions. Rather, we have determined that the potential deterrent effect of ignoring [Abid's] evidence is outweighed by the State's overwhelming interest in promoting and protecting the best interests of its children." *Id.* (internal quotation omitted).

At that point, Pyankovska asked the Nevada Supreme Court to seal the transcripts and to require the state trial court to do the same. The court granted the motion to seal the documents on its docket but ruled that Pyankovska must request the trial court to seal the materials on its docket. Pyankovska filed a motion to do so, but while it was pending, Abid uploaded the motion to seal and the illegally obtained transcripts to public Facebook pages. There, Abid called Pyankovska "a bully child abuser" who should not "be

able to hide behind a [motion to] seal," and the posts were widely disseminated, viewed, and commented upon.

In December 2016, Pyankovska sued Abid and Jones in the District of Nevada alleging violations of the Federal Wiretap Act, the Nevada statutory analogue, and asserting various other Nevada common-law claims. Jones moved under Rule 12(b)(6) to dismiss the complaint, contending that his conduct was protected by the vicarious-consent doctrine and that he had a good faith belief in the legality of this conduct. The district court granted the motion on other grounds.

First, the district court held that the vicarious-consent doctrine did not apply because Abid did not have actual custody over the son at the time the recordings were made as required by the doctrine. Second, the court held that none of Jones's arguments involving good faith reliance on legal authority applied to Jones's submission of the transcript. The court reasoned that "[i]f the court were to adopt defendant's reading of the good faith reliance language, then any time a defendant alleges a belief that his conduct did not violate the Wiretap Act, he obtains a complete defense to liability." *Pyankovska v. Abid*, No. 2-16-CV-2942, 2017 WL 5505037, at *4 (D. Nev. Nov. 16, 2017) ("*Abid* I"). Finally, the court held that any state litigation privilege to submit the illegal transcripts did not trump Jones's federal obligations under the Wiretap Act.

Despite these conclusions, the district court found that Jones's conduct was protected by the *Noerr-Pennington* doctrine. The court reasoned, tersely, that because "Jones' complained-of conduct consisted solely of judicial advocacy that is protected by the First Amendment, he cannot be held

liable under the Wiretap Act or under plaintiff's other theories of liability." *Id.* at *5.

The district court, however, allowed Pyankovska's claims against Abid to proceed. During discovery, the district court found that Abid had provided inaccurate responses to discovery requests. Despite the court granting Abid opportunities to supplement his responses, Abid continued to "disregard . . . obligations" and "flouted the rules and procedures of th[e] court." *Pyankovska v. Abid*, No. 2-16-CV-2942, 2019 WL 6609690, at *5 (D. Nev. Dec. 5, 2019) ("*Abid* II"). Accordingly, the court concluded that Abid's "conduct in discovery ha[d] been baseless and in bad faith" and entered a default judgment under Federal Rule of Civil Procedure 37(b) against him on all Pyankovska's claims. *Id.*

Pyankovska submitted an accounting of her actual damages claiming $3,125 in medical expenses and $1,413 in legal expenses. She also sought statutory damages under the Federal Wiretap Act as well as punitive damages. Abid did not submit declarations or any other evidence in opposition to Pyankovska's showing.

The district court awarded $10,000 in statutory damages. *Pyankovska v. Abid*, No. 2-16-CV-2942, 2020 WL 569877, at *4 (D. Nev. Feb. 5, 2020) ("*Abid* III"). Pyankovska moved to alter or amend the judgment arguing that the court miscalculated statutory damages and should have awarded punitive and litigation costs under the Wiretap Act and compensatory and punitive damages on her common law claims. The district court summarily denied the motion, holding that it had "considered all the arguments and accounting of the parties in making its determination."

*Pyankovska v. Abid*, No. 2-16-CV-2942, 2020 WL 13536217, at \*1 (D. Nev. June 24, 2020) ("*Abid* IV").

This appeal followed.

We review de novo the district court's dismissal of the complaint under Rule 12(b)(6). *Judd v. Weinstein*, 967 F.3d 952, 955 (9th Cir. 2020). We construe "as true all well-pleaded allegations of material fact and constru[e] those facts in the light most favorable to the non-moving party." *Id.*

## II.

### A.

The Federal Wiretap Act, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, prohibits the intentional interception, disclosure, or use of any oral communication without the consent of at least one party to the conversation:

> (1) Except as otherwise specifically provided in the chapter any person who — . . . (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of the subsection; (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information

> was obtained through the interception of a
> wire, oral, or electronic communication in
> violation of this subsection shall be punished
> as provided in subsection (4) or shall be
> subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1)(c)–(d). Under the Federal Act, "intercept" is defined as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). The Federal Act further provides that "no part of the contents of [any illegally intercepted] communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court . . . ." 18 U.S.C. § 2515. The Federal Act authorizes a civil action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a).[3]

There are two statutory exceptions. First, is court authorization. This exception is not at issue in this case. 18 U.S.C. §§ 2511(2)(e), 2516–18. The second is consent, where a communication may lawfully be intercepted by a party to the communication or when at least one party to the communication has given prior consent. 18 U.S.C. § 2511(2)(c)–(d). The Federal Act requires that to be liable, a person who discloses the contents of recordings, must "know or have reason to know" the communication was obtained in

---

[3] The Nevada Wiretap Act, patterned on the Federal Act, similarly prohibits the interception or disclosure of any wire, oral or electronic communication. Nev. Rev. Stat. §§ 200.610–.690; *see id.* § 200.650 (allowing for civil recovery).

violation of the Act—that is, without consent or court-ordered authorization.  18 U.S.C. § 2511(1)(c)–(d).

Jones plainly "used" and "disclosed" the intercepted communications when he filed the transcripts on the public docket in state court.  18 U.S.C. § 2511(1)(c)–(d).  Thus, the text of these provisions establish that Jones violated the Federal Act unless he is excused by some exculpatory doctrine.   On appeal, Jones essentially makes three contentions.  First, he argues that because Abid had consent to make the recordings under the vicarious-consent doctrine, he did not "have reason to know" that the recordings were illegal.   Second, Jones argues that, under *Bartnicki v. Vopper*, 532 U.S. 514 (2001), his posting of the transcripts constituted conduct protected by the First Amendment. Third, Jones argues that he is immunized from liability by the *Noerr-Pennington* doctrine.  The district court disagreed with the first two contentions but agreed with the third.

**B.**

The vicarious-consent doctrine is not the law of Nevada or this Circuit.    Patching together authority from other jurisdictions, we take the doctrine to mean that a parent who has physical custody of a child may consent to the recording of conversations on behalf of minor children, so long as the recording parent believes that doing so is in the best interest of the child.  *See Pollock v. Pollock*, 154 F.3d 601, 609 (6th Cir. 1998).   In *West Virginia Department of Health & Human Resources v. David L*, a case involving similar facts, the West Virginia Supreme Court held that a father violated the Federal Wiretap Act when he recorded conversations between his children and their mother (his ex-wife) with a tape recorder secretly installed in the mother's home.  453 S.E.2d 646, 654 (W. Va. 1994).  The court stressed that the

dispositive factor was that the recording occurred in the mother's house and that the father had "absolutely no dominion or control" over the mother's house. *Id.* Here, the district court similarly held that the doctrine did not apply because Abid did not have custody over the child at the time the recordings were made. We agree.

## C.

Next, Jones argues that his conduct is protected under *Bartnicki*. There, the Supreme Court carved out a narrow First Amendment exception to the Federal Wiretap Act. *Bartnicki* involved a recorded cellphone conversation during a contentious, very public, collective-bargaining negotiation between a teacher's union and a local school board. An unidentified person recorded a cell phone conversation between the chief negotiator and the union president concerning the status of negotiations. 532 U.S. at 517–19. Petitioners alleged that the head of a local organization opposed to the union's demands, obtained the recording, and disclosed it to members of the school board and representatives of the media. *Id.* at 519. Members of the media then obtained and disclosed the intercepted conversations to the public. *Id.*

The Supreme Court held that while the disclosures violated federal and state wiretap statutes, the individuals were protected by the First Amendment. *Id.* at 535. The Court reasoned that, "[i]n these cases, privacy concerns give way when balanced against the interest in publishing matters of public importance. . . . One of the costs associated with participation in public affairs is an attendant loss of privacy." *Id.* at 534. In reaching its conclusion, the Court placed significance on the public nature of the intercepted communications, noting that the union negotiations were

"contentious" and were the subject of intense media attention.  *Id.* at 518.

The conversations between Pyankovska and the child occurred in the most private of spaces—their home and car—and exclusively concerned intimate  relations between a child and his parents.  While the conversations may have been important within the family-court context to determine custody arrangements, they were matters of no public importance and consequently involved none of the First Amendment concerns that were dispositive in *Bartnicki*.  For these reasons, we conclude that *Bartnicki* does not apply.

## D.

The district court held, without elaboration, that the *Noerr-Pennington* doctrine immunized Jones from liability because Jones's "introduction of evidence into the state court case constitutes protected First Amendment activity."  *Abid I*, 2017 WL 5505037, at *4.  We disagree.

The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of "the right of the people . . . to petition the government for a redress of grievances."  U.S. Const. amend. I.   The doctrine originally arose in the antitrust context from the Supreme Court's decisions in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).  In *Noerr*, trucking companies sued railroad companies alleging that the railroads' lobbying efforts to influence legislation regulating trucking violated the Sherman Act.  365 U.S. at 129.  The Supreme Court held that "the Sherman Act does not prohibit . . . persons from associating . . . in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or

a monopoly." *Id.* at 136. The Supreme Court observed that construing the Sherman Act to reach such petitioning conduct "would raise important constitutional questions," and "we cannot . . . lightly impute to Congress an intent to invade . . . freedoms" protected by the Bill of Rights. *Id.* at 138. *Pennington* extended *Noerr*'s immunity to antitrust lobbying activities directed toward executive branch officials. 381 U.S. at 669–70. The Supreme Court has since applied this doctrine outside the antitrust field. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 930 (9th Cir. 2006) (citing *BE & K Construction Co. v. NLRB*, 536 U.S. 516, 525 (2002)).

This Circuit has therefore explained that *Noerr-Pennington* "ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000). This protection rests on the premise that Congress does not intend the statutes it promulgates to infringe on the First Amendment when other interpretations of the language it selected are possible. The doctrine is, among other things, a rule of statutory construction that requires courts to ask whether the statute at issue may be construed to avoid burdening conduct protected by the First Amendment. *See Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1139 (9th Cir. 2013); *Sosa*, 437 F.3d at 931 & n.5.

In this Circuit, there is a three-step test to determine whether conduct that allegedly violates a statute is immunized from liability. Under the test, the court asks: "(1) whether the lawsuit imposes a burden on petitioning rights," "(2) whether the alleged activities constitute protected petitioning activity," in other words, "neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham

petitions," and "(3) whether the statute at issue may be construed to [avoid] that burden.  If the answer at each step is 'yes,' then a defendant's conduct is immunized under *Noerr-Pennington*." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 645 (9th Cir. 2009).

The district court erred in holding that *Noerr-Pennington* immunized Jones from liability.  Jones's arguments face insurmountable hurdles under step one.  First, Pyankovska's lawsuit seeks to hold Jones liable in damages for disclosing illegally intercepted communications in the state court custody proceedings.  But Jones does not credibly argue that a successful damages action in federal court imposes an unconstitutional "burden" on the state court litigation.  The illegally obtained communications found their way into state court where the evidence was reviewed by the court-appointed psychologist and by the court and Abid prevailed: he won the custody litigation.  In light of Abid's victory, it is hard for Jones credibly to argue that the litigation of the custody motion was "burdened."

Second, *Noerr-Pennington* "[i]mmunity . . . applies only to what may fairly be described as petitions . . . ." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180 1184 (9th Cir. 2005).  We have explained that "[a] complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something, can be described as petitions without doing violence to the concept." *Id.*  Under this definition, Jones and Abid were entitled to participate and did participate in petitioning activity.  But once they were in court, they were obligated to play by the rules applicable to all litigants. Federal and state rules limit in enumerable ways

what litigants can say and do.  In federal courts, the Federal Rules of Civil Procedure and Evidence, page limitations, limitations on oral argument time, sanctions under Rule 11 of the Federal Rules Civil Procedure, as well as rulings by the court excluding testimony before and during trial do just that.  The sections of the Federal Act that prohibit the disclosure of evidence obtained in violation of the Federal Act and provide that "no part of the contents of [any illegally intercepted] communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court" are similar restrictions that apply in both state and federal courts.  18 U.S.C. § 2515.[4]

Jones and Abid's right to petition in a case with no public significance does not grant Jones immunity from the penalties prescribed by Congress for those who violate the Wiretap Act.  Once they were in state court, Jones and Abid were not at liberty to set their own rules.  Jones was free to file and argue the custody motion—i.e., to petition—but he was not free to support that motion with illegal evidence. *Sosa*, 437 F.3d at 933.  In other words, because Jones had no petitioning "right" to use the transcripts in the first place, requiring him to face the consequences specified by Congress for those who violated the law is not a cognizable "burden" on any conduct he was lawfully entitled to participate in.  For these reasons, Jones fails at step one and *Noerr-Pennington* cannot protect him from liability.

---

[4] *See Gelbard v. United States*, 408 U.S. 41, 51 (1972) (stating that the Federal Wiretap Act functions as a civil exclusionary rule, denying the perpetrator of a Wiretap Act violation "the fruits of his unlawful actions in all civil and criminal proceedings").

Accordingly, we need not analyze steps two and three.**[5]** In any event, it is worth emphasizing that the Wiretap Act unambiguously applies to Jones's conduct. *See Embry*, 29 F.4th at 540 (expressly foreclosing *Noerr-Pennington* immunity where "the statute clearly provides otherwise") (quoting *Sosa.*, 437 F.3d at 931). The Wiretap Act prohibits in no uncertain terms the interception, disclosure, or use in court of oral communications obtained in violation of the Act. *See* 18 U.S.C. § 2511(1)(c)–(d). The prohibitions in the Nevada Act are similarly clear. *See* Nev. Res. Stat. §§ 200.620–.690. Here, Abid intercepted communications without consent in violation of the Wiretap Act, and Jones used and disclosed those illegally obtained, selectively edited communications by attaching them as exhibits to a motion in state court.

The legislative history of the Wiretap Act makes clear that Congress intended it to apply to domestic relations disputes. Congress knew that divorcing spouses were increasingly using electronic surveillance techniques to gain advantage in marital disputes and, when drafting the Act, viewed interceptions in this context as an area of particular concern. *United States v. Jones*, 542 F.2d 661, 666–69 (6th Cir. 1976). Senator Hruska, one of the bill's co-sponsors, announced that the Wiretap Act would impose a "broad prohibition on private use of electronic surveillance, particularly in domestic relations" cases. *Id.* at 669 (citing

---

[5] For example, at step three, we ask whether the Wiretap Act "may be construed to [avoid] *that burden*" on petitioning activity. *Embry*, 29 F.4th at 535 (emphasis added). As we have said, complying with laws and rules of general application to litigants in court imposes no legally cognizable burden on Jones's conduct that is protected by the First Amendment's Petition Clause, so there is no work for *Noerr-Pennington* and the canon of constitutional avoidance to do.

S. Rep. No. 90-1097, at 151 (1968)).  As the prohibitory provisions in these Acts are pellucid, not ambiguous, we readily conclude that Jones violated the Acts.

For these reasons we vacate the judgment of the district court insofar as it applied *Noerr-Pennington* and remand for further proceedings at which Jones's other contentions in mitigation or defense may receive further consideration as the district court deems appropriate.

## III.

A district court's award of damages is reviewed for an abuse of discretion. *Caudle v. Bristow Optical* Co., 224 F.3d 1014, 1023 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 2, 2000).  A denial of litigation costs is also reviewed for an abuse of discretion. *See Ass'n of Mex.-Am. Educators v. State of California*, 231 F.3d 572, 592 (9th Cir. 2000). "An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Rabkin v. Oregon Health Sciences Univ.*, 350 F.3d 967, 977 (9th Cir. 2003) (citation and internal quotation marks omitted).

## A.

The district court awarded Pyankovska $10,000 in statutory damages.  It reasoned that "[t]he statute in this case instructs the court to award the greater of plaintiff's actual damages incurred as a result of the violation or $10,000" and found that "[b]ecause plaintiff's actual damages of $4,589 are less than" $10,000, Pyankovska was owed $10,000 to compensate her for Abid's violation of the Wiretap Act. *Abid* III, 2020 WL 569877, at *4.  The district court did not address Pyankovska's arguments on her state law claims.

Instead, in response to Pyankovska's motion to alter or amend the judgment, the district court stated concisely that "plaintiff claims that the court did not consider her arguments regarding compensatory and punitive damages on her state law claims. . . . This court considered all the arguments and accounting of the parties in making its determination on damages." *Abid* IV, 2020 WL 13536217, at \*1. On appeal, Pyankovska challenges the statutory damages award as incorrectly calculated and the state law damages as inadequate.

Violations of the Wiretap Act provides for a "civil action" in favor of any person whose oral communication "is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a); *see* Nev. Rev. Stat. § 200.690 (similar). "Appropriate relief" in a federal civil case includes equitable relief, damages, punitive damages, and reasonable attorney's fees and "other litigation costs." 18 U.S.C. § 2520(b). The Wiretap Act provides that "the court may assess as damages whichever is the greater of (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2); *see also* Nev. Rev. Stat. § 200.690(1)(b) (similar). We have held that "the statutory-damages provision clarifies that violations are remedied on a per-day basis, not a per-occurrence basis. . . . And were a single violation to extend over multiple days, the number of assessments would be based on the number of days the violation continued." *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1149 (9th Cir. 2020).

Abid argues that the statutory damages award was proper as the court "may" award statutory damages and therefore

gives courts discretion not to award statutory damages at all. But the district court erred in failing to consider whether Abid violated the statute for more than 100 days, which would render the amount greater than $10,000.

The district court concluded that "[b]ecause plaintiff's actual damages of $4,589 are less than the statutory damages authorized by 18 U.S.C. § 2520(c)(1), the court awards plaintiff statutory damages in the amount of $10,000 to compensate her for defendant's violation of the Wiretap Act." *Abid* III, 2020 WL 569877, at *4. However, as Pyankovska correctly notes, once the district court decided that statutory damages *should* be awarded, it was bound by the statutory text, which permits the court to award $10,000 only when that award would be greater than both "the sum of the actual damages suffered by the plaintiff and any profits made by the violator" *and* "$100 a day for each day of violation." 18 U.S.C. § 2520(c)(2)(A)–(B). The $10,000 liquidated damages amount under § 2520(c)(2)(B) is designed to compensate a claimant for all of a defendant's violations under the Act, unless that defendant has violated the Act on more than 100 separate days, in which case compensation is $100 for each such day. *See Smoot v. United Transp. Union*, 246 F.3d 633, 646 (6th Cir. 2001).

Here, Pyankovska contends that Abid violated the Wiretap Act over at least 707 days by (1) intercepting Pyankovska's conversations with the child using a recording device, (2) disclosing contents of the recordings in a declaration submitted to the state court, and (3) disclosing and intentionally using the transcripts by posting them and leaving them available on various public Facebook groups for approximately two years. And if Pyankovska is correct, 707 days of violations would mean a statutory damage award of $70,700, not $10,000. *See* 18 U.S.C. § 2520(c)(2). The

district court erred in its analysis of the statutory damages award, and we remand so that the district court may revisit its calculations.

The district court also appears to have conflated punitive damages and litigation costs and discussed those awards as actual damages suffered. In addition to statutory damages, the Wiretap Act allows for punitive damages "in appropriate cases," 18 U.S.C. § 2520(b)(2), and "reasonable attorney's fee and other litigation costs reasonably incurred," 18 U.S.C. § 2520(b)(3). To receive punitive damages, a plaintiff "must show that [the] defendant[] acted wantonly, recklessly, or maliciously." *Jacobson v. Rose*, 592 F.2d 515, 520 (9th Cir. 1978). Here, the court appeared to recognize that Abid "deliberately violated the Wiretap Act for personal gain" and referred to "defendant's flagrant violation of her privacy" but then concluded that these factors counseled only towards an award of $10,000 in statutory damages. *Abid* III, 2020 WL 569877, at *4. While it was within the court's discretion to decide whether to award punitive damages and attorney's fees, we remand so that the district court can provide more clarity as to the appropriateness of punitive damages and attorney's fees.

**B.**

Pyankovska argues that the district court further erred by ignoring her damages request on her Nevada invasion-of-privacy and infliction-of-emotional-distress claims, though these claims were part of the default judgment entered against Abid. *See United Nat'l Ins. Co. v. R & D Latex Corp.*, 141 F.3d 916, 918–19 (9th Cir. 1998) (finding that the district court abused its discretion in failing to make any findings and to state its reasoning). In the district court's order on Pyankovska's motion to amend a judgment, the

court simply stated that "plaintiff claims that the court did not consider her arguments regarding compensatory and punitive damages on her state law claims. This court considered all the arguments and accounting of the parties in making its determination on damages." *Abid* IV, 2020 WL 13536217, at *1. Abid argues that the district court considered Pyankovska's evidence but was simply not convinced.

The district court did not address Pyankovska's invasion-of-privacy and infliction-of-emotional-distress claims nor did it discuss the evidence she submitted in support of these claims. The court's discussion of damages associated with the state common law claims is relegated to a very brief comment in response to Pyankovska's motion to amend the judgment. We therefore remand to afford the district court the opportunity to provide additional explanation concerning Pyankovska's eligibility for compensatory and punitive damages on the Nevada common-law claims.

## CONCLUSION

For these reasons, we **VACATE** and **REMAND** for further proceedings consistent with this opinion.